Now please call the first case. 112-3432, Meridian Express v. Pellissippi. Counsel, you may proceed. May it please the court. Counsel. My name is David Van Overloop, and I represent the petitioner at Blount, Charles Robinson, in this matter. If I may briefly summarize the procedural history. This matter was first heard by an arbitrator of the Illinois Workers' Compensation Commission on March 3, 2011. At the time of hearing, the issues in dispute were whether an accident occurred that arose out of and in the course of Mr. Robinson's employment with Meridian Express, whether Mr. Robinson's present condition of ill-being was causally related to the injury incurred in that accident, whether the medical services provided to Mr. Robinson were reasonable and necessary, whether Mr. Robinson was due any compensation for temporary total disability, and whether Mr. Robinson was entitled to prospective medical treatment. Mr. Robinson also requested penalties be assessed against Meridian Express at the time of hearing pursuant to sections 16, 19K, and 19L of the Illinois Workers' Compensation Act. After hearing testimony and considering the evidence, the arbitrator rendered his decision on April 15, 2011, finding that Mr. Robinson did sustain injuries that arose out of and in the course of his employment with Meridian Express on January 18, 2008, that his present condition of ill-being is causally related to the injury incurred in that accident, that Meridian Express is responsible for $36,942.35 in reasonable and necessary medical expenses for treatment of that injury, and that Mr. Robinson was due, as of the date of hearing, 162-6-7 weeks of temporary total disability benefits. So the commission found in favor of the client? The arbitrator did, and then it was reviewed to the commission, and the arbitrator's decision was adopted and affirmed in its entirety. The circuit court set it aside? Yes, the circuit court set it aside. On what basis? The circuit court issued a decision on October 16, 2012, reversing the decision of the commission, based on a finding that no causal connection exists between petitioner's present condition of ill-being and any work accident. We then filed the appeal to this court, seeking reversal of the circuit court and reinstatement of the decision of the commission. It's our position that the testimony and evidence submitted at the initial arbitration hearing on March 3, 2011, was sufficient to support the decision of the arbitrator, which was in turn unanimously affirmed and adopted by a panel of commissioners. Did the circuit court say anything about the claimant's credibility? The circuit court did. The circuit court judge found or discussed that she found issues with the credibility of the claimant. The arbitrator, in their initial decision that was affirmed and adopted by the commission, also addressed the credibility of both the claimant, Mr. Robinson, and the witnesses, former agents of press. Is the circuit court entitled to re-weigh the credibility of the witnesses? It is within the province of the commission to weigh the credibility of the witnesses and to weigh the evidence that is presented. If there is sufficient evidence to support their determination, then their decision cannot be said to be against the manifest weight of the evidence. The commission is given the standard of determining whether or not a party has the claimant The evidence that is in support of the award that was ordered by the commission and by the arbitrator is the consistency and the testimony of Mr. Robinson. The arbitrator was there, determined seeing Mr. Robinson testify live that his testimony was true.  I think what he, Justice Hudson wants to know is what did he say? Not who saw it. What did he say happened? Mr. Robinson's testimony and his account of the accident was that he was at work on Friday, January 18, 2008, making a delivery in the process of cranking a trailer and slipped and fell backwards. He landed on the ground, felt a dull pain, was dazed for a moment, was eventually able to get back up and complete the tasks. He testified that throughout the day he had difficulties with making further deliveries, that he called in to dispatch to report the incident, and at the end of the day, upon completing, notified them again of the incident and went home still in pain, still with difficulties with walking and moving his legs. He treated himself over the weekend. You have to give the whole background. Was the claimant's testimony consistent with the history of the accident and the work? It is. It is. He gave credible testimony that over the weekend he treated himself, that he was unable to perform his job tasks on Monday and was sent home, that for the next week he attempted still to provide himself home remedies with, you know, soaking and home medications before he eventually determined that this wasn't going away and he presented to the emergency room the following weekend. So what did the claimant's treating physician and the employer's Section 12 examiner say? The treating physician, both Dr. Rivera and Dr. Hurley, took a consistent history of the accident to start with and then related his condition to an accident as he described it. So they gave a causal opinion that there was a causal connection between the workplace accident and his condition of ill-being. Is that right? Yes. Okay. And that's your argument for why the commission's decision was not against the manifesto aid of the evidence. Is that correct? Yes, that it was sufficiently supported that the commission had a basis defined in favor of petitioner. Okay. As far as the temporary total disability and medical benefits, these weren't even addressed at the circuit court. The circuit court's decision stopped when there was a finding that there was no causal connection to any accident. But, again, here the evidence does support the commission's decision awarding the temporary total disability. So you want us to reverse the decision and reinstate the decision of the commission. Is that correct? Yes, in its entirety. Okay. Thank you. Thank you, Counsel. Counsel, you may respond. Good afternoon, Justices, Counsel. I was preparing for this case and was reminded about 25 years ago when I was sitting in my law school orientation listening to my dean talk, my dad was a lawyer sitting next to me, and he scribbled on a piece of paper a reasonable belief, reasonable man, reasonable in the circumstances, and slid it over to him and I asked him, you know, what's that all about? And he said, well, my dean at Northwestern told me this 25 years ago and that's what your dean's telling you. It's at the heart of everything that you'll be practicing, what's reasonable and what's rational. And I was reminded of that last night when I was looking at this because the facts are overwhelming in the favor of the employer in this case. And the only real hurdle that I could see in preparing for this is this against the manifest way of the evidence standard. And when reviewing all the cases, that gets thrown around and thrown around and thrown around. But if you really parse it down, in the cases that are cited here and the cases cited by the circuit court and counsel in their brief, is that it's reasonable inferences from the facts. It's whether a reasonable trier of fact would find to be a sufficient basis in the evidence for the decision. That's... What's unreasonable about this? This decision was patently unreasonable. First of all, if you start with the facts. If you start with the facts of this case and what this guy tried to get the arbitrator and the commission to believe, is that he suffered an accident at 8.30 in the morning. He was crawling around on the ground and had to be helped with a golf cart to his truck and then loaded into his truck. And then he called the dispatcher. He called the dispatcher twice. And then he reported back to the employer, told the dispatcher again how he got hurt, how he fell. He was debilitated, couldn't use his legs, and went home. Okay, that's the story and that's the facts. If you look at the judge, all of this evidence, if you look at the commission, they didn't even spend a full page on those facts. And then here's the analysis. The analysis is on page 6 of the commission's decision, and it's one little paragraph. Respondent cross-examined petitioner and said cross-examination verified the testimony of the petitioner. There was no proof offered during cross-examination to dispute the testimony regarding the accident. Respondent, to its witnesses or documents, did not offer any proof that the petitioner's testimony regarding the facts of the accident were contradicted. That's the analysis, okay? And the employer didn't offer any proof to contradict. In other words, I mean, the petitioner testified where he was, where he was dropping off the trailer. If that wasn't true, the employer could have gone and tracked down some witnesses there, I suppose, couldn't they? Well, you know, the onus, like in civil court, would be on both sides to subpoena witnesses. But what we did, why this is not a true statement, why this is a farce, this statement, is that the very start of cross-examination, I pulled out the trip sheet for this gentleman's day, okay? And that totally contradicted everything he said on his direct examination. Totally contradicted that he was injured at 8.30 in the morning and had to come limping back to the point. But you say it contradicted it because he didn't note it on his trip sheet. Correct. He didn't note it on his. First of all, I think his starting point. I mean, there's a difference between a direct contradiction and the absence of something. Well, I think you're right about that. And that's why I think business records in this, that's why it's admissible the absence of something in a business record, which the absence of a report, the absence of medical treatment, all of those things are relevant to this case. But I think what is important about this is that he first initially, if you look at his testimony, denied that was his trip sheet. He denied, no, this can't be. This can't be. All you're doing is giving us a bunch of reasons why you didn't believe him. The commission did. No, I don't think that the commission. Well, I think the commission has an obligation. I think the commission has an obligation to support their decision with sufficient evidentiary foundation. They did. His story, his doctor, your doctor saying that if what he told me is correct, this is work-related, then they were to benefit. You're turning around saying he's a liar. He wasn't credible. They shouldn't have believed him. We could draw inferences from it. That's right. They could have gone in that direction, but they didn't. But that's why the reasonable inferences come into play. No, it's the manifest way to the evidence. Is there evidence in this record that supports this decision? Of course there is. And that's what I'm trying to show you. What is that evidence? I would ask you, what is that evidence? Because his trip log shows that he worked a full 14-hour day. His attorney had to stop him and go, no, no, no, no, no, yeah, this is your log. Don't say that. You signed it. If you look at his redirected, no, no, no, no, we'll agree to that. So he worked a 14-hour day. He went one stop after another. Great argument to make to the commission. Great argument. The credibility determiner. They didn't buy it. Well, no, but that's not so. So his testimony is not uncontradicted. Of course it is. It's uncontradicted. You introduce no evidence to say he didn't fall. You introduce no evidence to say he wasn't hurt. There is evidence. Not hurt is a different issue. Yes. If you look at the fact that he was off, suspended, being late for work for a whole week, and then he doesn't show up hurt until eight days later. He comes back. He comes back to the employer. There's no evidence that he's hurt at all. The Section 12 examiner does contradict that he fell. He said he fell on the bricks. He said in his application he slipped on ice. In one history he said he fell forward. In one history he said he fell backwards. That all contradicts his testimony. There was, when he returned back to the employer, a witness viewed him. He could use his legs. He never said anything about the accident. Well, that's if the commission didn't have to believe that witness. Maybe the commission didn't believe the dispatcher. Let me finish. Didn't believe the dispatcher, justified. Didn't believe the manager. Maybe the commission thought they cooked up all these contradictory statements. We don't know. But there were two sides to the story. The commission believed the petitioner. Well, I think that if you go through all the testimony, I mean, the testimony I read to you is three reports that day. The evidence that's in the facts of this, he contradicts himself. Okay, he contradicted himself that he didn't work a full day. Then the report that you talk about, he contradicted that. After I said, well, you have a two-way radio. Did you call it in? Then he retracted that. He said, well, maybe I didn't call it in until later. And the Section 12 examiner, he told me he called it in four days later. He contradicted his own testimony. Counsel, here's the hurdle you need to overcome. The law is well subtle, but it's within the exclusive province of the commission to judge the credibility and believability of the witnesses. So you need to confine your argument, tell us why his testimony was so inherently unbelievable on its face in the absence of contradictory evidence. The second principle is, as you know, we don't get to re-weigh the evidence and substitute our judgment. So you need to tailor your argument to overcome those rather substantial hurdles. I understand. That's why I started my argument with the hurdle. Your argument was that this guy's testimony is inherently unbelievable. Well, he testified to it, but you didn't offer any evidence to contradict it. Justice, the trip log shows that he didn't or let's move from the trip log. It showed he wasn't, he worked the full day. The commission saw that. He admitted he worked the full day. He admitted he picked up the load. He delivered the load. Went to his next place, told them he had trouble walking. They notify his dispatcher according to the section 12. Where did he work the full day? He worked 14 hours. He did stops beyond what he told the arbitrator in his testimony. The trip sheet shows that he didn't work, he told the arbitrator he didn't work a full day. The trip log shows he worked a full day. The evidence with regard to the other witnesses, he came in on Monday morning. At 8.30 in the morning. All right? His normal start time according to the trip log is 7 a.m. The day of the accident was set at 7 a.m. But instead of admitting and saying I came in to tell him I was hurt, he tried to argue his start time was not 7 a.m. And the reason he was doing that is because he knows he came in late that day and was suspended from work for a week. There's absolutely no explanation of why he took a week off. The decision by the commission says he wasn't offered any work and then he was off work for a week. That isn't supported by the evidence. That's not reasonable evidence to support their decision. So you're asking us to not believe, you're asking us to find that basically the claimant is not hurt. I'm asking you to look at all the evidence. And I think the cases on the manifest way to the evidence standards say it has to be reasonable inferences. There has to be a support, an evidentiary foundation for the commission's decision. There is. There's a claimant's testimony. The claimant's testimony... The commission doesn't really need anything beyond that, do they? Well, it has to be reasonable. It has to be supported by the evidence. The claimant's testimony is not supported by the evidence. Well, the claimant's testimony, you're pointing out inconsistencies or contradictions. Doesn't mean it's not supported. The documents, the testimony of all the witnesses, and the testimony of the claimant himself are all contradictory. And if you look at all the evidence, the burden is on me to show that it was against the manifest way to the evidence, which means I have to show that there was not a sufficient evidentiary foundation for the decision. And I don't believe that there is. I believe that he, as the circuit court judge says, he gave testimony that was flatly contradicted, and it was just a fraction of the evidence. With all due respect, I think the circuit court judge, it's not up to the circuit court judge to re-weigh the credibility of the witnesses. That's where this case went off the track. I don't think that she was weighing the credibility of the witnesses. I think what she was pointing out is rather than to do this small paragraph in a small set of facts, she went through all the evidence and listened to the evidence and pointed out the inconsistencies in all the evidence. Why would a gentleman, when he says he came in on Friday to pick up his paycheck and was confronted with that evidence, well, they saw you again on Friday when you came, and you were showing no ill signs of being injured, like crawling on the ground and all the things you talked about. And then he said, well, I had a secret friend. I had a friend come in. In other words, you want us to announce a decision that we affirm, we find that the commission's finding was an error in affirming the circuit court because we have re-weighed the evidence and we find that the decision and the testimony is not credible. That's what you're asking us to do? Not re-weigh the credibility of the witnesses. Oh, really? To look at what the case, and I'll read the, in resolving questions of fact, it's within the province of the commission to assess the credibility of the witnesses, resolve the conflicts in the evidence, and assign weight according to the evidence. So then the role of the court then is to determine if it's contrary to the manifest weight of the evidence, and it is when it determines that no rational trier of fact could have agreed with that decision or if there's not sufficient evidentiary foundation for that decision. So the arbitrator and how many commissioners are irrational? This isn't a personal attack on the commissioners. We understand that. But you're saying that their decision is not rational, no rational trier of fact could have decided it. I don't think, I agree with that. I agree with that. I think that's where the reasonableness comes into this. If you look at the reasonableness of the facts that were cited in support of this decision, when a claimant said I reported this injury right away, and then when he's confronted on cross-examination and he says, oh, you know what? Maybe I did report it right away. Oh, maybe I told the section 12 examiner I reported it four days later. You know, maybe, maybe, maybe I reported it three times. That's not the story that the arbitrator found. The arbitrator says he goes, he picks up this, he goes to the Norfolk and Southern rail yard. He was supposed to take an empty trailer to a customer in the suburbs. He found the trailer, began to hook it up, slipped backwards, sat on the ground for a while, felt a dull pain, got up, pulled himself into the truck and proceeded to check the trailer out. He then drives to the customer's place of business. When he gets there, he informs the customer he's having trouble, couldn't lift his leg out of the truck. He informs the shipping office at the customer's place of business about the accident. The shipping clerk at the customer's place of business then takes a golf cart, drives him back out so he can get into his truck. The truck is loaded. He takes the truck out. He delivers it. He then calls the dispatcher, again, advises him how he was feeling. And then where does he go? He goes to another stop in Chicago Heights, picks up a load, brings it back to Chicago to the same facility where he was before. After the load, he goes back to the respondent's facility, reported the instance of the dispatcher that he was hurting. Where's the problem here? What's irrational about it? The problem is that that doesn't conform to what he did that day. We have that non-contemporaneous document. Well, what did he do that day that isn't in that discussion? He worked at a number of stops after that, and he came back at 10 o'clock, 11 o'clock at night after doing a full day. That contradicted his testimony. That testimony was flatly contradicted. And? Does that contradict him on the question of whether he fell down and hurt himself? Well, I think that if he fell down, the issue is causation. I think the circuit judge was right. I think there's no doubt this guy was injured. There's no doubt this guy was injured. We see it all the time where people have a week off vacation, come back from water skiing, and now they're hurt. Wait a minute. Does all of this conversation you're having go to the question of whether he was telling the truth when he said, when he was hooking up this empty trailer, he fell down and he hurt himself? Now, the thing that you're talking about has anything to do with whether he fell down or didn't. The judge's decision was on causal connection, not on the accident. So he could have fallen down 15 times that day. The issue is whether that fall was the debilitating cause of his injury that we're here for all the treatment. And what I'm suggesting to you is a guy that had to supposedly crawl around and be carried by a golf cart, he comes in and he's viewed by multiple witnesses over multiple days. He receives no medical treatment of any kind. His own logs contradicted that he did what he said he did. He didn't indicate any problem in his trip sheets. He had a number of people that he interacted with, and all of them say, we have the dispatcher that he supposedly told that he injured himself to a contemporaneous record, a contemporaneous record that was admitted without objection that said that he was suspended from work on that following Monday because he showed up late for work. His own testimony is that he showed up at 8.30 or 9 when the records contradicted that his starting time was at 7 o'clock. All of which has nothing to do with the question of whether he fell down at work. It has to do with the fact that he fell down at work because his explanation for why he was off the entire next week, he doesn't give one. And the employer says it's because he was suspended. He was suspended for being tardy to work. So because he didn't, I don't understand your logic. Are you trying to suggest that because he lied about what time he came back to work, he shouldn't be believed as to whether he fell down at work? No. He was trying to represent to the arbitrator he was off that whole week because of this injury. And that is not true. He was suspended. He was suspended because he reported late for work. And when asked about that, he wouldn't even admit his start time. And so the issue is that all of the evidence, when you weigh all of the facts that the arbitrator relied on, it comes down to what the court said. A small sliver of what the evidence was, and that evidence was flatly contradicted. And if you take that away, we're left with him showing up for medical treatment 8 days later after he was observed by numerous people over that span of 8 days and had no injury and received no medical treatment and came to work on Monday morning. And then he sent a fax to the, after his suspension for being off work, he sends a fax in February saying, do I have any vacation time? I've got an off work slip from my doctor for being injured. Not work related, for being injured, can I take some vacation time? It's not until the 12th of February that the employer gets notified he has a work injury. And at that time, and Justice, to your question, then they do the form 45, they send it on to the employer, and they follow everything according to protocol. If this guy goes. Your time has gone beyond. Okay. Well, I appreciate the extra time. The point is that if you look at the evidence, there's not a sufficient evidentiary foundation in the record in that this should be overturned, the commission's decision overturned, and Justice Brendan's decision should be affirmed. Thank you. Thank you, Counsel. Counsel, you may reply. Why is this sufficient evidence? Why is there a sufficient evidentiary basis? I believe that you have all touched on it, that this isn't an issue anymore of what's more likely. The preponderance of the evidence burden was on the commission to decide. There is sufficient evidence between the testimony of Petitioner, between the records and the medical evidence, to support his account. The evidence supporting another idea, it may be there. It may be possible that there is another outcome from these facts. It was up to the commission to decide which of those outcomes. Well, opposing counsel is saying this contradiction is all over the place in this record, that the conclusion should be that he's just not credible. The determination of his credibility was made by the arbitrator and by the three commissioners that unanimously agreed that he was credible, that his ---- Yeah, they can say that all day long, but if there's no basis for that ---- Well, I believe that you have touched on this, that whether or not they specifically agree with the credibility, there is no evidence to actually counter that he fell down at work. And all of the medical records do point to an incident as he described it, falling down at work on the 18th of January, as causing the condition that he is suffering from now, and causing a need for him to require further treatment and time off from work. Thank you, Counsel Bowles, for your arguments in this matter. It will be taken under advisement for written disposition of the issue.